**McCULLOUGH et al. v. SCHOOL DIST. NO. 37, BRYAN CO., et al.**

No. 16488—Opinion Filed April 13. 1926.

**1. Schools and School Districts—Contract with Teacher—Validity.**

A contract signed by two members of a school district board, with a teacher, which results from an informal meeting of the school directors, without prior notice, will constitute a valid and binding contract on the district, if duly approved by the county superintendent.

**2. Judgment not Sustained.**

Record examined; held, to be insufficient to support judgment against the plaintiff.

(Syllabus by Stephenson. C.)

Commissioners' Opinion. Division No. 4.

Error from District Court, Bryan County; Porter H. Newman, Judge.

Action by Effie McCullough and Grace Williams against School District No. 37 et al. Judgment for defendants, and plaintiffs bring error. Reversed.

MacDonald & MacDonald, for plaintiffs in error.

Utterback & Stinson, for defendants in error.

Opinion by STEPHENSON, C. W. A. Bramley, W. C. Barnes and E. O. White were the duly elected and acting members of the district board for school district No. 37, in Bryan county, on March 15, 1924. The three members of the school board met at the home of W. A. Bramley on March 15th, without prior notice or understanding. A teacher's contract, bearing date as of March 22, 1924, was entered into with Effie McCullough, for teaching the school in the district for the school year of 1924-25. The contract was signed by W. A. Bramley and W. C. Barnes. Following the signature of W. C. Barnes, is the following phrase: "Signed March 29th." The contract bears the approval of Ceph Shoemake, as county superintendent, under date of June 9, 1924. A contract purports to have been entered into between school district No. 37 and Grace Williams on the 22nd day of March, 1924, and signed by W. G. Bramley and W. C. Barnes. The following phrase follows the name of Barnes: "Signed March 27th". The contract bears the approval of Ceph Shoemake, as county superintendent, under date of March 22, 1924. The school district held its annual meeting on March 25, 1924. C. C. Johnson was elected as a director at the

meeting in the place of W. C. Barnes. The school board held a meeting on May 19, 1924. Minutes of the meeting were introduced in evidence, and read as follows;

"Minutes of Board Meeting.
"May 19, 1924
"Tomlin School;

"School board met in called session for the purpose of coming to an understanding about teachers for the term of school for the year 1924-25. Motion by E. O. White that this school board is not going to be bound by the teachers' contracts that have been signed by individuals of the school board. Seconded by C. C. Johnson. After a discussion of this motion the director, Mr. W. A. Bramley, refused to serve, and C. C. Johnson acted as director in Mr. Bramley's place. Motion carried. Motion by Mr. Johnson that we employ Mrs. Edith Aldridge as principal at a salary of $100 per month, and Miss Thelma Harmon as assistant teacher at a salary of $75 per month. Motion carried."

C. C. Johnson had succeeded to the place of W. C. Barnes at the time the meeting was held, on May 19th. A formal contract, bearing date as of May 19th, was entered into between the board and Edith Aldridge, as teacher for the school year 1924-25. The contract bears the approval of Ceph Shoemake, as county superintendent, under date of Dec. 13, 1924. The board also entered into formal contract in writing with Thelma Harmon, as teacher, for the school year 1924-25. The contract bears the approval of Ceph Shoemake, as county superintendent, under date of December 13, 1924. E. O. White and C. C. Johnson signed the contracts on the part of the school board.

The plaintiffs tendered their services as teachers to the school district for the school term contracted for. The board refused to accept the services as tendered, and the term was taught by Edith Aldridge and Thelma Harmon. The plaintiffs Effie McCullough and Grace Williams commenced their action against the school district and the teachers subsequently employed, for the breach of their contracts of employment. The trial of the cause resulted in judgment for the defendants. The plaintiffs have perfected their appeal, and assign as error that the judgment is contrary to the law and the evidence.

A material part of the findings of the court as to the invalidity of plaintiffs' contracts is in the following language:

"The alleged contracts purporting to be made by the school board of school district No. 37, with the plaintiffs Effie McCullough

and Grace Williams, was not valid contracts, and were not entered into by the board, as a board at any meeting for that purpose."

There was considerable controversy among the witnesses as to what occurred at Bramley's home on March 15th, in relation to the board employing the plaintiffs, Mr. Barnes, who signed the contracts for the plaintiffs, and who was succeeded by C. C. Johnson on the board, testified that all three of the members of the board met at Bramley's home on March 15th. Mr. Barnes testified that Messrs. Bramley and White agreed to employ the plaintiffs as teachers. Notice was not given any of the members of the meeting at Bramley's home, and it is not clear what occasioned the meeting of the three parties. It is clear that two of the three members of the board, who were present at Bramley's home, later signed contracts for the plaintiffs.

The board was authorized under section 10367, C. O. S. 1921, to employ teachers after March 1st. and before the annual meeting of the voters of the school district. It is apparent that no minutes were made of the meeting on March 15th. The contracts were approved by the county superintendent as required by law.

The county superintendent did not undertake to express or to give any reason why he approved the later contracts. The law does not require a formal notice of a meeting of the school directors to employ teachers. Whatever notice that may be required was rendered unnecessary, as the three members met together for some cause or reason. It is to be supposed that many of the duties will be performed by the school district board in an informal manner, and the fact that minutes were not made and kept of the meeting, would not vitiate any judgment they might reach, or contract which they might enter into within the law.

One of the purposes for requiring the county superintendent to approve the contracts of teachers, is to aviod the situation presented by this appeal. If this court should fail to uphold the contracts of the plaintiffs in the form as made, it would result in a great deal more inconvenience and difficulty in future contracts, than the judgment in this appeal will occasion.

The teachers, who were employed on May 19th, and the members of the board, who entered into the subsequent contracts, were informed and knew of the proceedings that had transpired between the plaintiffs and the two members of the board. The county

superintendent knew that he had already approved contracts for the plaintiffs, when the second contracts were presented to him for action. The evidence in the case discloses that the county superintendent submitted one or both of plaintiffs' contracts to the state superintendent for some purpose. Thereafter, followed the approval of the contracts by the county superintendent. The school district should have determined the status and validity of plaintiffs' contracts, after the same had been approved by the county superintendent, before entering into the second contracts. After teachers' contracts have been executed by a majority of the members of the board, and approved by the county superintendent, they should stand until canceled and set aside in the way and manner provided by law. This course will prevent a repetition of the difficulty arising in this case.

The court appears to have rested its judgment against the plaintiffs, mainly on the informal nature of the meeting of the board. and failure to give notice of the meeting. The Supreme Court of Kansas had a similiar question before it; we think the court applied a wholesome rule in the disposition of the case.

"The members of the district board cannot bind the district when acting separately and apart from each other. * * * 'They must all meet together, or be notified to meet together, or have an opportunity to meet together, to consult over the employment of the teachers, before the contract can be legally entered into by them so as to bind the district.' But the statute prescribes no special form or manner by which, and no particular place at which, the board shall be convened; nor do we think it was intended or necessary that any formal call should be made for the purpose of legally convening a school district board. It is sufficient if all are present, or had an opportunity to be present, and if at least two of them agreed to make the contract in dispute."

The case is styled Brown v. School District, reported in 1 Kan. App. 530, 40 Pac. 826.

The court was in error in entering judgment against the plaintiffs. The judgment is reversed and remanded for further proceedings in accordance with the views herein expressed.

By the Court: It is so ordered.

Note.—See under (1) 35 Cyc. p. 1083; anno. L. R. A. 1915F, 1052; 24 R. C. L. p. 615; 3 R. C. L. Supp. p. 1377; 5 R. C. L. Supp. p. 1292. (2) 4 C. J. p. 1164 § 3181.